[Cite as *Bentley v. Cleveland Browns Football Co., L.L.C.*, 194 Ohio App.3d 826, 2011-Ohio-3390.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95921**

**BENTLEY,**

APPELLEE,

v.

**CLEVELAND BROWNS FOOTBALL CO., L.L.C., ET AL.,**

APPELLANTS.

**JUDGMENT:**
AFFIRMED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-732395

**BEFORE:**    Blackmon, P.J., Jones, J., and Cooney, J.

**RELEASED AND JOURNALIZED:**    July 7, 2011

Haber Polk Kabat, L.L.P., Shannon J. Polk, Andrew A. Kabat, and Daniel M. Connell; and Taft Stettinius & Hollister, L.L.P., Patrick J. Krebs, and Philip R. Bautista, for appellee.

Squire, Sanders & Dempsey (US), L.L.P., Frederick R. Nance, J. Philip Calabrese, and Chaundra C. Monday, for appellants.

PATRICIA ANN BLACKMON, Presiding Judge.

{¶ 1} Appellant Cleveland Browns Football Company, L.L.C. appeals the trial court's denial of its motion to compel arbitration and assigns the following error for our review:

> I. When it denied the Cleveland Browns their right to enforce the alternative dispute resolution clauses of the NFL Player's Contract of Plaintiff-Appellee LeCharles Bentley and the Collective Bargaining Agreement, the trial court erred as a matter of law under Chapter 2711 of the Ohio Revised Code, which embodies Ohio's strong policy in favor of arbitration, and Section 301 of the Federal Labor Management Relations Act, which preempt state-law claims that involve interpretation of a collective bargaining agreement.

{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision and remand for further proceedings consistent with this opinion. The apposite facts follow.

{¶ 3} On March 1, 2006, LeCharles Bentley executed a six-year National Football League ("NFL") player's contract with the Cleveland Browns. As part of Bentley's employment with the Cleveland Browns, he entered into an NFL Collective Bargaining Agreement ("CBA"). On July 27, 2006, during the Browns' preseason training, Bentley tore his left knee patellar tendon; he had surgery the following day to repair the injury.

**{¶ 4}** Three days later, he began a postoperative regimen of physical therapy, medical care, and treatment at the Cleveland Browns' training facility in Berea, Ohio. On August 22, 2006, he was unable to walk; his knee swelled; and he experienced flu-like symptoms. The Cleveland Browns immediately advised Bentley to have his blood tested. Bentley was subsequently diagnosed with a staph infection; thereafter, he had multiple surgeries; he also had other medical procedures designed to eradicate the infection.

**{¶ 5}** On July 22, 2010, Bentley filed a complaint against the Cleveland Browns, asserting causes of action for fraud and negligent misrepresentation. Bentley specifically alleged that he contracted a staph infection at the Cleveland Browns' training facility while undergoing postoperative rehabilitation on his torn left knee patellar tendon. Bentley alleged that the Cleveland Browns owns, operates, and maintains the training facility, which was open to both NFL players and non-NFL members of the general public.

**{¶ 6}** Bentley also alleged that the Cleveland Browns' head athletic trainer, Marty Lauzon, had represented that the facility was a "world class facility" with a strong track record for successfully rehabilitating other Cleveland Browns players, such as Braylon Edwards and Kellon Winslow. In addition, General Manager Phil Savage had represented that the Cleveland Browns had the best of everything.

**{¶ 7}** Bentley further alleged that based on the above representations, he chose to use the Cleveland Browns' training facility, although nothing required him to use the facility. Finally, Bentley claims that he was exposed to unsanitary conditions on

rehabilitation devices and surfaces, as well as other equipment that had not been properly maintained, disinfected, or cleaned. He claims that because of these misrepresentations, he was injured.

{¶ 8} On September 22, 2010, the Cleveland Browns filed a motion to stay the case pending arbitration or, in the alternative, to compel arbitration. In addition, the Cleveland Browns also moved to stay discovery pending determination of the proper forum for resolving the conflict with Bentley. Bentley opposed both motions. On October 22 and 26, 2010, respectively, the trial court denied the Cleveland Browns' motions to stay discovery and to compel arbitration. The Cleveland Browns now appeal.

## Motion to Compel Arbitration

{¶ 9} In its sole assigned error, the Cleveland Browns argues that the trial court erred in denying its motion to compel arbitration.

{¶ 10} In determining whether the trial court properly denied or granted a motion to stay the proceedings and compel arbitration, the standard of review is whether the order constituted an abuse of discretion. *Panzica Constr. Co. v. Zaremba, Inc.*, Cuyahoga App. No. 95103, 2011-Ohio-620, citing *U.S. Bank, N.A. v. Wilkens*, Cuyahoga App. No. 93088, 2010-Ohio-262. " ' "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." ' In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662

N.E.2d 1, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264, quoting *Spalding v. Spalding* (1959), 355 Mich 382, 384-385, 94 N.E.2d 810.

{¶ 11} This court has previously been split as to the standard of review for the granting or denial of a motion to compel arbitration and to stay proceedings pending arbitration. *GB AZ 1, L.L.C. v. Arizona Motors, L.L.C.*, Cuyahoga App. No. 95502, 2011-Ohio-1808. See *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482 (holding that the question whether a party has agreed to submit an issue to arbitration is a question of law requiring de novo review). Cf. *Bevan v. Owens–Illinois, Inc.*, Cuyahoga App. No. 84776, 2005-Ohio-2323; *Sikes v. Ganley Pontiac Honda* (Sept. 13, 2001), Cuyahoga App. No. 79015, 2001 WL 1075726 (holding that the appropriate standard of review is abuse of discretion).

{¶ 12} In *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, the Ohio Supreme Court clarified this issue and held that when determining the alleged unconscionability of an arbitration clause, the reviewing court must conduct a de novo review.

{¶ 13} However, the issue before this court does not involve an allegation of unconscionability of an arbitration clause. Rather, the issue is whether Bentley's claims pertain to the CBA, thereby invoking the arbitration provision contained therein. Regardless of which standard of appellate review this court applies, abuse of discretion or de novo, we find that the trial court did not err in denying the Cleveland Browns' motion to compel arbitration and stay proceedings pending arbitration.

{¶ 14} Ohio and federal courts encourage arbitration to settle disputes. *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 27, 623 N.E.2d 39. We are mindful of the strong presumption in favor of arbitration as an efficient and economical alternative dispute mechanism. *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 712, 590 N.E.2d 1242. An arbitration clause in a contract is generally viewed as an expression that the parties agreed to arbitrate disagreements within the scope of the arbitration clause; and with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected. *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 668, 687 N.E.2d 1352.

{¶ 15} However, parties cannot be compelled to arbitrate a dispute that they have not agreed to submit to arbitration. *Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, Cuyahoga App. No. 88948, 2008-Ohio-1820, citing *Piqua v. Ohio Farmers Ins. Co.* (1992), 84 Ohio App.3d 619, 621, 617 N.E.2d 780; *St. Vincent Charity Hosp. v. URS Consultants, Inc.* (1996), 111 Ohio App.3d 791, 793, 677 N.E.2d 381; *Shumaker v. Saks, Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393.

{¶ 16} In the instant case, Bentley asserted causes of actions for fraud and negligent misrepresentation against the Cleveland Browns. To prove fraud, a plaintiff must demonstrate (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation, and (6) a resulting injury proximately caused by the reliance. *Englert v. Nutritional*

*Sciences, L.L.C.*, 10th Dist. No. 07AP989, 2008-Ohio-5062, citing *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859.

{¶ 17} A claim of negligent misrepresentation requires the following: " ' "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." ' "  *Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, Cuyahoga App. No. 94973, 2011-Ohio-1237, ¶ 39, quoting *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, quoting Restatement of the Law 2d, Torts (1965) 126-127, Section 552(1).

{¶ 18} The Cleveland Browns argues that Bentley's fraud and negligent-misrepresentation causes of actions are subject to the mandatory and exclusive arbitration provisions of the CBA.   However, this issue, involving the Cleveland Browns and concerning allegations identical to Bentley's assertions, has recently been addressed in *Jurevicius v. Cleveland Browns Football* (Mar. 31, 2010), N.D. Ohio No. 1:09 CV 1803.

{¶ 19} On June 26, 2009, Joe Jurevicius, also a professional football player then under contract with the Cleveland Browns for the 2006 through 2009 seasons, filed suit against the Cleveland Browns, asserting eight causes of actions, including fraud and negligent misrepresentation.   Jurevicius, like Bentley, alleged that he contracted a staph

infection at the Cleveland Browns' training facility, while he was undergoing postoperative rehabilitation.

{¶ 20} Similarly, Jurevicius alleged that the Cleveland Browns' head athletic trainer, then general manager, and then head coach made false representations regarding efforts to prevent staph infections at the facility. Jurevicius alleged that the Cleveland Browns concealed information about the lack of precautions taken at the training facility to prevent staph infections. Jurevicius, as does Bentley, alleged that he relied on the Cleveland Browns' representations to his detriment.

{¶ 21} On August 3, 2009, the Cleveland Browns removed Jurevicius's case to federal court and argued, as they now do in Bentley's case, that the claims required an interpretation of the CBA and were subject to arbitration. However, pertinent to the fraud and negligent-misrepresentation claims, the federal court held that neither claim arose from nor required the interpretation of the CBA to determine their outcomes.

{¶ 22} We agree with the federal court's determination that the claims for fraud and negligent misrepresentation do not implicate the CBA. We see no reason to depart from that determination. In *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, the Ohio Supreme Court held that a state court may rely on a federal standard in applying Ohio law on the issue of arbitrability. Consequently, we conclude that the trial court did not err when it denied the Cleveland Browns' motion to compel arbitration.

{¶ 23} Nonetheless, the Cleveland Browns rely on *Jeffers v. D'Allessandro* (2009), 199 N.C.App. 86, 681 S.E.2d 405, and *Sherwin v. Indianapolis Colts, Inc.*

(N.D.N.Y.1990), 752 F. Supp. 1172, 1178, to support their claim that Bentley's claims of negligent misrepresentation are substantially dependent upon an analysis of the CBA and therefore subject to arbitration. However, we find both *Jeffers* and *Sherwin* distinguishable from the present case.

{¶ 24} In *Jeffers*, a former professional football player brought an action against a physician and clinic for medical malpractice and against a football team for negligent retention, intentional misconduct, and breach of implied warranty, alleging that the physician performed additional, unauthorized procedures during knee surgery that went beyond his informed consent.

{¶ 25} Similarly, in *Sherwin*, a former professional football player brought suit, alleging that the team and team doctors failed to provide adequate medical care and intentionally withheld information regarding the true nature of his injury.

{¶ 26} In both cases, the teams filed motions to dismiss or, in the alternative, to stay pending arbitration under the CBA between the league and players' union. In both *Jeffers* and *Sherwin*, the courts generally concluded that the teams' duty to retain a team physician and the duty of the players to have a physician-patient relationship with that physician arose out of the CBA and required analysis of the CBA in order to be resolved.

{¶ 27} In the instant case, Bentley's claims involve the staph infection he contracted during postsurgery rehabilitation in a facility that the Cleveland Browns represented as a world-class facility and where other Cleveland Browns football players, specifically Braylon Edwards and Kellon Winslow, had undergone successful postsurgical rehabilitation. It is undisputed that nothing in the CBA required Bentley to

use the Cleveland Browns' facility, a fact that appellant's counsel conceded at oral argument. It is also undisputed that after Bentley underwent knee surgery, he could have chosen any facility in the country for his rehabilitation and would not have contravened the CBA.

{¶ 28} Given that Bentley's postsurgical rehabilitation would not have contravened the CBA if he had chosen to go elsewhere, it would be unnecessary to analyze the CBA to resolve the claims that arose from his contracting the staph infection at the Cleveland Browns' facility. Therefore, the trial court properly denied the Cleveland Browns' motion to compel arbitration. Accordingly, we overrule the sole assigned error.

Judgment affirmed

and cause remanded.

JONES and COONEY, JJ., concur.

_____