[Cite as *Smith Design & Constr., Inc. v. N.L. Constr. Corp.*, 2014-Ohio-4904.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SMITH DESIGN & CONSTRUCTION, INC. | JUDGES:<br>Hon. William B. Hoffman, P. J.<br>Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| -vs- | Case No. 2014 CA 00002 |
| N.L. CONSTRUCTION CORP. | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:  Civil Appeal from the Court of Common
Pleas, Case No.  2013 CV 02517

JUDGMENT:  Affirmed

DATE OF JUDGMENT ENTRY:  November 3, 2014

APPEARANCES:

For Plaintiff-Appellee

JAMES M. MCHUGH
DAVID L. DINGWELL
TZANGAS PLAKAS MANNOS LTD
220 Market Avenue South
Eighth Floor
Canton, Ohio  44702

For Defendant-Appellant

IAN H. FRANK
AARON S. EVENCHIK
FRANTZ WARD LLP
2500 Key Center
127 Public Square
Cleveland, Ohio  44114-1230

*Wise, J.*

**{¶1}** Appellant N.L. Construction, Inc. appeals the December 18, 2013, decision of the Stark County Common Pleas Court denying its Motion to Stay Proceedings pending arbitration.

**{¶2}** Appellee is Smith Design & Construction, Inc.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** This case arises out of a dispute between the parties, Appellant N.L. Construction Corporation (NL) and Smith Design & Construction, Inc. (Smith Design), associated with the construction of a maintenance facility project for the Ohio Department of Transportation (ODOT) located in Noble County, Ohio (Noble County Project).

**{¶4}** NL was serving as the general contractor for the Noble County Project. During the summer of 2010, Smith Design submitted its bid to NL to be selected to provide services as a subcontractor on the job. Following the signing of a Subcontract Agreement, Smith Design began work on the project.

### Prior Court of Claims Litigation

**{¶5}** In 2011, Appellant N.L. Construction Corp. (NL) filed suit against the Ohio Department of Administrative Services in the Ohio Court of Claims case titled *N.L. Construction Corporation v. Ohio Department of Administrative Services, et al.,* Case No. 2011-08318, (the "Project Litigation"). NL's claims against the State in the Project Litigation arose out of NL's prime contract with the State of Ohio for construction of the ODOT Noble County Maintenance Facility Project (the "Project"). NL subcontracted with Appellee Smith Design & Construction, Inc. for a portion of the concrete and masonry

work on the Project. The State asserted a counterclaim in the Project Litigation for damages and delays related primarily to Smith's work. Based on the State's counterclaim, on November 9, 2011, NL filed a third-party complaint against Smith including indemnity against the State's claims.

{¶6} On December 30, 2011, Smith, in turn, filed a counterclaim against NL.

{¶7} On August 30, 2012, and as modified by the Court's November 28, 2012, Journal Entry Approving Settlement, the judge in the Project Litigation entered summary judgment against the State of Ohio, and in turn dismissed NL's indemnity counterclaims against Smith without prejudice. Smith then voluntarily dismissed its counterclaim against NL without prejudice, ending the Project Litigation between NL and Smith.

### Current Stark County litigation

{¶8} On September 25, 2013, Appellee Smith filed a new Complaint in the Stark County Court of Common Pleas against Appellant NL ("Stark Litigation"). Appellee Smith asserted claims for sums allegedly due for certain work Smith performed as a subcontractor for NL on the Project.

{¶9} On November 22, 2013, NL filed its Answer denying the allegations in the Complaint and including a Statement regarding Counterclaims claiming that NL's Counterclaims are subject to a binding arbitration provision in the written contract between NL and Smith. Contemporaneously with the Answer, NL filed a Motion to Stay Proceedings Pending Arbitration pursuant to R.C. §2711.02.

{¶10} On December 4, 2013, Appellee Smith filed its Response in Opposition to Motion to Stay.

{¶11} On December 13, 2013, Appellant NL filed its Reply in Support of the Motion to Stay Pending Arbitration including an affidavit concerning the arbitration provision in the Subcontract Terms.

{¶12} On December 18, 2013, the trial court issued a Judgment Entry noting that the Court reviewed the Motion to Stay, Response in Opposition, and Reply Brief, and the trial court denied NL's Motion to Stay. The Judgment Entry did not articulate the basis for the Court's ruling or provide an analysis of the issues.

{¶13} Appellant now appeals, assigning the following error for review:

**ASSIGNMENT OF ERROR**

{¶14} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT N.L. CONSTRUCTION CORP.'S ("NL") MOTION TO STAY PROCEEDINGS PENDING ARBITRATION BECAUSE THE CONTRACT BETWEEN APPELLANT AND APPELLEE CONTAINS A MANDATORY AND BINDING ARBITRATION PROVISION, AND NL NEVER WAIVED ARBITRATION.

**I.**

{¶15} In its sole Assignment of Error, Appellant argues that the trial court erred in denying its motion to stay proceedings pending arbitration.  We disagree.

{¶16} "In determining whether the trial court properly denied or granted a motion to stay the proceedings and compel arbitration, the standard of review is whether the order constituted an abuse of discretion." *Bentley v. Cleveland Browns Football Co., L.L.C.,* 194 Ohio App.3d 826, 2011–Ohio–3390, 958 N.E.2d 585, ¶10 (8th Dist.) "Abuse of discretion" implies more than a mere error of judgment or law, but indicates that the

trial court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 140 (1983).

**{¶17}** The issue before the trial court was whether the Subcontractor Agreement entered into between the parties contained an enforceable arbitration clause.

**{¶18}** The Subcontract Agreement was signed by Scott Smith on August 9, 2010, and returned by mail to NL. On August 11, 2010, NL's representative, Eric Kerzan, signed the documents on behalf of NL and returned a copy of the signed documents to Smith Design.

**{¶19}** Appellant NL maintains that the contract contained a mandatory and binding arbitration provision. Said arbitration provision is set forth in a nine (9) page document captioned "Subcontract Terms", which Appellant claims was attached to the Subcontract Agreement along with five other documents.

**{¶20}** Appellee maintains that this "Subcontract Terms" document was not included with the Subcontract Agreement, and that it never agreed to the terms contained therein.

**{¶21}** The Subcontract Agreement in this case is a two-page document which contains the following language:

**{¶22}** "**5. CONTRACT DOCUMENTS**

**{¶23}** "The Subcontractor shall perform its work and is hereby bound by the following documents hereby incorporated into this Subcontract Agreement:

**{¶24}** "1. Subcontract Terms

**{¶25}** "2. Scope of Work- "A"

**{¶26}** "3. Contract Documents – "B"

**{¶27}** "4. Insurance Coverage – "C"

**{¶28}** "5. Safety Coverage – "D"

**{¶29}** "6. Drug Free Workplace Participation – "E"

**{¶30}** "**6. ENTIRE AGREEMENT**

**{¶31}** "This Agreement and the listed attachments in paragraph 5 above constitute the entire agreement between the parties and no other representations; promises or understandings will be recognized unless signed in writing by both parties."

**{¶32}** The two-page Subcontract Agreement does not contain any references to arbitration. According to Appellee, the only subcontract documents presented to Smith Design for approval and execution were as follows:

- Subcontract Agreement (2 pages)
- Subcontractor Scope of Work, Exhibit A (3 pages)
- Contract Document Specifications, Exhibit B (7 pages)
- Insurance Coverage, Exhibit C (1 page)
- Safety Rules, Exhibit D (3 pages)
- Drug Free Workplace Policy, Exhibit E (1 page)

**{¶33}** The document attached to the Subcontract Agreement and captioned as "Exhibit B", states:

The following Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

1. The Subcontract Agreement

2. The General Contract Agreement between State of Ohio and NL Construction Corp.

3. The Supplementary and other General Conditions of the Contract are those contained in the Project Manual (Book #1, 2 & 3). as prepared by Jerome M. Scott Architects, Inc.

4. Addendums #1

5. The specifications are those contained in the Project Manual (Books 1, 2, & 3) and Drawings as prepared by Jerome M. Scott Architects, Inc: (sic).

**{¶34}** Absent from this list is any reference to a "Subcontract Terms" document.

**{¶35}** The nine (9) page "Subcontract Terms" document which Appellant alleges to have been included with the Subcontract Agreement included a line on each page designated for "Subcontractor's Initials" and contains the initials "O.S." The initials "O.S." do not belong to anyone within the Appellee Smith Design organization.

**{¶36}** In his Affidavit, Mr. Smith stated that the first time he saw the 9 page "Subcontract Terms" document was on April 10, 2012, during his deposition in the Court of Claims proceeding. In that deposition, when counsel for NL presented "a copy of the subcontract" to Mr. Smith for identification, the following exchange occurred:

**{¶37}** Q. Sir, take a moment to review that document. I see that you are doing that already .... Do you recognize this document'?

**{¶38}** A. Not all of it.

**{¶39}** Q. I am sorry?

**{¶40}** A. Not all of it.

**{¶41}** Q. Tell me what part of this Exhibit 5la copy of the Subcontract Agreement that contained the "Subcontract Terms" along with the Subcontract Agreement attachments you do not recognize?

**{¶42}** A. I will take page one. I will take page two where I signed .... From page one, from there on, until page nine I have never seen that. [Referring to the 9 page "Subcontract Terms" document.] That is not my signature. That is not my signature from one to nine.

**{¶43}** Q. Where it says "Subcontractor initials," that is not yours?

**{¶44}** A. Yep. That is not mine .... I don't know whose it is. I would be the only one to sign it.

**{¶45}** In *Council of Smaller Enterprises v. Gates, McDonald & Co.,* 80 Ohio St.3d 661, 1998–Ohio–172, the Ohio Supreme Court enunciated the four principles which guide determinations of arbitrability:

**{¶46}** The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration. *AT & T Technologies,* 475 U.S. at 648–649, 106 S.Ct. at 1418, 89 L.Ed.2d at 655, quoting [*United Steelworkers of Am. v.*] *Warrior & Gulf [Navigation Co.* (1960)], 363 U.S. [574] at 582, 80 S.Ct. [1347] at 1353, 4 L.Ed.2d [1409] at 1417.

**{¶47}** The second principle is that "the question of arbitrability—whether a [n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.,* 475 U.S. at 649, 106 S.Ct. at 1418, 89 L.Ed.2d at 656.

**{¶48}** The third rule is, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.,* 475 U.S. at 649, 106 S.Ct. at 1419, 89 L.Ed.2d at 656.

**{¶49}** The fourth principle is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage'." *Id.,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656, quoting *Warrior & Gulf, supra,* 363 U.S. at 582–588, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417." *Council of Smaller Enterprises,* 80 Ohio St.3d at 665–666, 687 N.E.2d 1352.

**{¶50}** Parties cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration. *Rona Ents., Inc. v. Vanscoy*, 5th Dist., Perry App. No. 09CA6, 09CA8, 2010-Ohio-1836, *Piqua v. Ohio Farmers Ins. Co.* (1992), 84 Ohio App.3d 619, 621, 617 N.E.2d 780; *St. Vincent Charity Hosp. v. URS Consultants, Inc.* (1996), 111 Ohio App.3d 791, 793, 677 N.E.2d 381; *Shumaker, supra.*" *Marks v. Morgan Stanley Dean Witter Commercial Financial Services, Inc.,* Cuyahoga App. No. 88948, 2008-Ohio-1820, ¶ 15.

**{¶51}** Based on the foregoing, we find that the trial court had sufficient evidence before it to find that Appellee did not agree to arbitration in this matter and find no abuse of discretion in the trial court's denial of Appellant's motion to stay.

**{¶52}** Further, had this Court found that the arbitration clause in this matter was enforceable, we find that Appellant waived same.

**{¶53}** It is well-established that the right to arbitration can be waived. "A party can waive his right to arbitrate under an arbitration clause by filing a complaint." *Glenmoore Builders, Inc. v. Kennedy,* 11th Dist. No. 2001–P–0007, 2001–Ohio–8777, 2001 Ohio App. LEXIS 5449, at *9, 2001 WL 1561742 citing *Rock, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* (1992), 79 Ohio App.3d 126, 128, 606 N.E.2d 1054.

**{¶54}** To prove waiver, the opposing party merely needs to show: (1) that the party waiving the right knew of the existing right of arbitration and (2) that the party acted inconsistently with that right.

**{¶55}** "Active participation in a lawsuit [and failure to request arbitration in a timely manner,] evidencing an acquiescence to proceeding in a judicial rather than arbitration forum has been found to support a finding of waiver." (Citations omitted.) *Griffith v. Linton,* 130 Ohio App.3d 746, 752, 721 N.E.2d 146 (1998).

**{¶56}** Here, Appellant initiated litigation in the Court of Claims case when it filed its third-party complaint against Appellee on November 9, 2011.  At no time in that

action did Appellant raise the issue of arbitration or make a demand for same. We find such actions to be inconsistent with any purported right to arbitrate the claims in this matter.

{¶57} For the foregoing reasons, the decision of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, J., concurs.

Hoffman, P. J., concurs separately.

JWW/d 1024

*Hoffman, P.J., concurring*

**{¶58}** I concur in the majority's analysis and disposition of Appellant's assignment of error on the basis the trial court did not abuse its discretion denying Appellant's motion to stay because sufficient evidence was presented to find Appellee did not agree to arbitration.

**{¶59}** However, I am not convinced Appellant waived its right to seek arbitration as a result of the Project Litigation in the Ohio Court of Claims. Instead I would find Appellee's waiver argument moot under the two issue rule.